# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| v. ) | Criminal No.: 2:09-463-PMD |
| ) | |
| Alex White, III, ) | |
| ) | **ORDER** |
| Defendant. ) | |
| _____ ) | |

This matter is before the court upon Defendant Alex White, III's ("Defendant") Motion to Suppress a HiPoint 9mm semi-automatic pistol and .380 caliber ammunition found during the search of Defendant's backpack. Defendant is charged in a one count indictment alleging that having been convicted of a crime punishable by imprisonment for a term exceeding one year, he knowingly did possess in and affecting commerce a firearm and ammunition. A hearing was held on this motion on October 25, 2010.

## BACKGROUND

At around 9:09 p.m. on October 1, 2008, City of North Charleston Police Officer Bill Anthony Tilton was working the area of Chicora-Cherokee, a high-crime neighborhood in North Charleston, when he received a dispatch about a complaint concerning a subject who was exposing himself near or at a Subway restaurant in the area. Officer Tilton received a description of the individual, and he was able to respond quickly because he was already in the vicinity of the restaurant. As he approached the location, he saw a person, later identified as Defendant, who matched the description of the suspect that was provided to him. According to Officer Tilton, Defendant was walking away from the Subway restaurant and towards St. Charles Place, and he approached Defendant in order to conduct a field interview concerning the reported indecent exposure violation. Defendant was dressed in baggy clothing and was carrying a red

book bag. Officer Tilton asked Defendant if he had a weapon on him. According to Officer Tilton, Defendant appeared "extremely nervous," to the point that "his legs were shaking." For Officer safety purposes, Officer Tilton asked Defendant for consent to search him. Defendant consented to the search.

During the search of Defendant's person, Officer Tilton felt a bundle of ten wrapped packages of marijuana in Defendant's pocket. Defendant was arrested for possession with intent to distribute. Meanwhile, Officer Christopher Blair Terry arrived to the scene, and he examined the red book bag Defendant had been carrying. In the book bag, Officer Terry found a 9mm handgun along with a set of hair clippers. Defendant informed Officer Tilton that he carried the gun with him for his protection, as he worked in a barber shop in a dangerous neighborhood. The Officers also recovered ten rounds of .380 caliber ammunition. Defendant is charged in a one-count indictment for being a previously convicted felon in possession of a firearm and ammunition, all of which had been shipped and transported in interstate commerce.

## ANALYSIS

Defendant contends, in part, that the pistol and accompanying ammunition found in his book bag should be suppressed from evidence because it was the product of an unreasonable seizure. However, this argument is unpersuasive because the initial encounter was not a seizure. At the hearing, Defendant argued that the tipster who called about a man exposing himself outside of Subway on Rivers Avenue was not referring to the Subway at 2000 McMillan Avenue where Officer Tilton was dispatched. Officer Tilton was dispatched specifically to the Subway on McMillan Avenue where he found a person matching the description he was given: an African American male, with dread style hair, wearing a white shirt, and wearing dark colored pants. Officer Tilton decided to initiate an encounter with Defendant to interview him about the

indecent exposure complaint, because Defendant matched the description and location of the dispatch he received. Officer Tilton made these reasonable judgments based in good faith on the information he was given.

The encounter was consensual, rather than a seizure, therefore, it is immaterial whether Defendant was indeed the subject of the caller's report. A person is seized only when, by means of physical force or show of authority, his freedom of movement is restrained. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). Only when such restraint is imposed is there any foundation for invoking constitutional safeguards. *Id*. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy. *Id*. at 554. Additionally, Police officers do not need to have reasonable suspicion to initiate a voluntary encounter with a suspect when the encounter is based on consent, because an officer is permitted to approach a person in a public area and ask questions of the individual. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (stating that "[o]ur cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.,* 499 U.S. 621, 628, (1991), the encounter is consensual and no reasonable suspicion is required).

In this case, nothing in the record indicates that Defendant's initial encounter with the police officers was anything other than voluntary. Officers approached Defendant for the purpose of interviewing Defendant about the conduct described in the phone call. As only one officer approached Defendant, he was clearly not coerced by a threatening presence of several officers. Additionally, the officer did not display a weapon, no physical touching of Defendant's person took place until he was searched, and the officer did not use language or tone of voice

indicating that compliance with the officers' request was compelled. Defendant's initial encounter with the officer was not a seizure within the meaning of the Fourth Amendment. Therefore, it appears the initial encounter with police officers did not violate Defendant's Fourth Amendment rights.

Not only was the initial encounter with Defendant not violative of his rights, but also the pat-down search of Defendant did not violate Defendant's Fourth Amendment rights. The testimony at the hearing revealed that Defendant consented to a pat-down search of his person. A search conducted after a subject has given consent is constitutionally permitted. *Bustamonte*, 412 U.S. at 219 (1973). The suspect does not need to be informed of his right to refuse consent, as long as the consent is given knowingly and voluntarily, the search is permissible. *See Id.* at 227 (stating that "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent"). *See also United States v. Boone*, 245 F.3d 352, 362 (4th Cir.), *cert denied*, 532 U.S. 1031 (2001).

The drugs on Defendant during the pat-down justified arresting Defendant. Next, an inventory search of Defendant's bag was conducted pursuant to normal police procedure. The inventory search uncovered the gun and ammunition that is the subject of this Motion to Suppress. It is well settled that police may conduct an inventory search of a defendant's possessions to inventory them once the defendant is in custody. *See South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). When these searches are conducted in good faith and in accordance with standard police procedures they do not violate the Fourth Amendment. *Id.* at 372. Evidence discovered during a valid inventory search is admissible against a defendant. *Colorado v. Bertine,* 479 U.S. 367, 374 (1987). In this case, Officer Tilton testified that the inventory

search was conducted in accordance with standard police procedure, in order to inventory Defendant's belongings to avoid uncertainty about what possessions Defendant had with him at the time of arrest. Indeed, the police officers gave the hair clippers to Defendant's girlfriend at his request. Therefore, that evidence should not be suppressed.

## CONCLUSION

Therefore, the initial encounter with Defendant was voluntary; Defendant consented to a pat-down search, during which drugs were found on Defendant; Defendant was arrested for the drugs; and law enforcement conducted an inventory search conducted pursuant to normal police procedure that uncovered the gun and ammunition. As Defendant's Fourth Amendment rights were not violated by any of this conduct, the HiPoint 9mm semi-automatic pistol and .380 caliber ammunition found during the inventory search of Defendant's backpack should not be suppressed.

Based on the foregoing, the court **DENIES** Defendant Alex White, III's Motion to Suppress.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**October 26, 2010**
**Charleston, SC**